**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-62836-BLOOM**

VICTOR MANUEL CURBELO ALONSO,

Petitioner,

v.

WARDEN, Broward Transitional Center, GARRETT RIPA, Miami Field Office Director, CHARLES WALL, Principal Legal Advisor, ICE Office of the Principal Legal Advisor, TODD BLANCHE, U.S. Attorney General, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, and MARCOS CHARLES, ICE Acting Executive Associate Director,

Respondents.
_________________________________/

## ORDER ON HABEAS PETITION

**THIS CAUSE** is before the Court upon Petitioner Victor Manuel Curbelo Alonso's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, ECF No. [1] ("Petition"). Petitioner challenges his continued detention by United States Immigration and Customs Enforcement ("ICE"). *Id*. The Court issued an Order to Show Cause, ECF No. [4], and Respondents filed a Response, ECF No. [5]. The Court has reviewed the Petition, the Response, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, the Petition is granted.

Before proceeding to its analysis, the Court makes two clarifying points. First, though additional procedural protections are necessary in the custody redetermination context, the Court does not opine on what the outcome should be with this particular Petitioner. It may be determined that Petitioner should be detained as a danger to the community or flight risk, but that decision

should rest on proper procedural grounds and a more fairly-developed record. Second, the Court's decision arises in the particular context of those detained under 8 U.S.C. § 1226(a) experiencing prolonged detentions—that is, those whom the Government has identified as not bearing the "criminal" or "terrorism-related" hallmarks justifying mandatory detention under § 1226(c). *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1263 n.13 (11th Cir. 2026). For those detained under different statutory provisions who otherwise claim an entitlement to custody redeterminations, the ultimate decision may not require additional procedural protections.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba who illegally entered the United States near Del Rio, Texas on September 18, 2021, without admission or parole. ECF No. [5-1]. Petitioner was encountered the same day by U.S. Customs and Border Protection ("CBP") and was subsequently released. *Id*.

On March 4, 2022, CBP issued and served Petitioner with a Notice to Appear ("NTA"), pursuant to § 240 of the Immigration and Nationality Act ("INA"). ECF No. [5-3]. The NTA charged Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the INA, as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General, and under § 212(a)(7)(A)(i)(I) of the INA, as an immigrant who, at the time of application for admission, was not in possession of a valid entry document required by the INA. *Id*. Petitioner admitted all the NTA's allegations and conceded the charges of removability. *Id*. Petitioner is still in removal proceedings. ECF No. [5-2].

ICE Enforcement and Removal Operations ("ERO") encountered Petitioner after he was arrested by Village of Palm Springs, Florida Police Department for the offense of Driving Under

the Influence with a Minor in Vehicle. ECF No. [5-1]. ICE ERO issued a warrant for his arrest, ECF No. [5-7], and the criminal case remains pending. ECF No. [5-8].

Petitioner was transferred into ICE custody on March 5, 2026, ECF No. [5-4], and withdrew his request for a custody bond redetermination on March 20, 2026. ECF No. [5-5]. Petitioner filed a new request for a custody redetermination hearing on July 8, 2026, and on July 17, 2026, the Immigration Judge denied bond because Petitioner did not meet his burden to show he was not a danger to the community/ public safety risk, due in part to his recent arrest for Driving Under the Influence. ECF No. [5-6]. The Immigration Judge also found he was not suitable for bail. *Id*. Although Petitioner reserved his right to appeal the decision to the Board of Immigration Appeals ("BIA"), Petitioner failed to perfect an appeal. ECF No. [5] at 3. Petitioner remains detained at Broward Transitional Center during the pendency of his removal proceedings. *Id.*

Petitioner filed the Petition on October 8, 2026, asserting that he is entitled to another bond hearing that comports with the requirements of § 1226(a) and the requirements of due process, providing him with a true individualized determination. ECF No. [1]. He argues that administrative exhaustion requirements should be excused because, in part, further administrative proceedings would be futile. *Id.* ¶ 73.

Respondents agree that Petitioner's detention is governed by § 1226(a). ECF No. [5] at 4. However, they argue that he has already received a constitutionally adequate bond hearing and merely disagrees with the result. *Id.* at 5. Furthermore, he has failed to exhaust his administrative remedies by failing to appeal the immigration judge's bond decision to the Board of Immigration Appeals. *Id.* at 5–6.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. See 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

Respondents argue the Court lacks jurisdiction to evaluate the constitutional adequacy of the bond hearing pursuant to 8 U.S.C. § 1226(e). That provision states that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

It is true that "§ 1226(e) precludes an alien from 'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the Attorney General has made regarding his detention or release.'" *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). And if the Court construed the Petition only as challenging the Immigration Judge's discretion in weighing the custody redetermination factors, the Court would certainly agree that it lacks jurisdiction. But the Petition raises separate and broader questions, in particular the constitutional sufficiency of the bond hearing that Petitioner was provided.[1] Indeed, Petitioner

---

[1] The Court is guided by the Supreme Court's instruction that its obligation to construe *pro se* filings liberally "carr[ies] particular weight" in the habeas context. *Simmons v. United States*, 142 S. Ct. 23, 25 (2021).

asserts that he "has never received a *constitutionally adequate* individualized custody determination[.]" ECF No. [1] ¶ 23. He asserts that "decisions addressing procedural fairness in immigration proceedings . . . underscore that non-citizens are entitled to fundamentally fair procedures consistent with the Due Process Clause." *Id.* ¶ 70. And courts routinely find that they are empowered to assess whether a bond hearing complies with Fifth Amendment due process and statutory requirements. *See, e.g.*, *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Whether [petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *distinguished on other grounds by Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."); *Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019) ("Because we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we are limited to reviewing only those of Quinteros' challenges that pertain to the adequacy of process he received at his bond hearing"); *De Leon Trejo v. Bullock*, No. 26-5186, 2026 WL 2057094, at *2 (6th Cir. May 14, 2026) ("We can, however, review whether the bond hearing itself satisfied the Fifth Amendment's guarantee of procedural due process."); *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022) ("whether an immigration judge must consider certain factors is still a 'constitutional challenge' to the procedures adopted by the Attorney General for all detention decisions under § 1226(a)").

Thus, the Court has jurisdiction to consider the constitutional adequacy of the bond hearing provided to Petitioner. The Court does not address the Immigration Judge's discretion in weighing individual factors applicable to Petitioner's specific case; rather, it analyzes the general *procedures* applied in Petitioner's bond hearing and whether those procedures violate his right to due process.

### B. Adequacy of the Bond Hearing

Petitioner contends that he was not afforded due process at his bond hearing and cites for support, *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). ECF No. [1] ¶ 68. In *Velasco Lopez*, the noncitizen petitioner had lived in the United States for many years, and his criminal history included pleading guilty to driving while impaired, an arrest for aggravated unlicensed operation of a vehicle, driving while intoxicated, and consumption of alcohol in a motor vehicle, and charges related to a bar fight. *Id.* at 846–47. The day after his last arrest, he was transferred into ICE custody and detained under § 1226(a). *Id.* at 845, 847. He received an initial bond hearing three-and-a-half months later, and at the hearing, the immigration judge placed the burden on the petitioner to justify his release. *Id.* at 847. When he could not do so, "in part due to the outstanding charges," the immigration judge denied release. *Id.*

The petitioner later submitted a renewed bond request, citing changed circumstances. *Id.* He was given a second bond hearing, where he again bore the burden of showing that he was neither a flight risk nor dangerous. *Id.* The immigration judge found that he did not have all the relevant facts before him, drew adverse inferences against the petitioner, and again denied release. *Id.* The petitioner filed a habeas petition "challenging on due process grounds the procedures employed in his hearings." *Id.* at 847–48. The district court granted the petition and ordered a new hearing at which the Government bore the burden of justifying the petitioner's continued detention by clear and convincing evidence of danger to the community or flight risk. *Id.* at 848. After the hearing, the immigration judge concluded that the Government had failed to establish that the petitioner was either a flight risk or a danger to the community and ordered the petitioner released on bond. *Id.*

On appeal, the Second Circuit addressed "whether [the petitioner]'s ongoing incarceration posed due process concerns at the time of his habeas filing and whether additional procedural protections then became necessary." *Id.* at 851. Specifically, it assessed whether, in light of his prolonged detention, the petitioner was entitled to a new hearing at which the Government bore the burden of justifying continued detention. *Id.* at 855. The Second Circuit, after assessing the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), found that the petitioner was denied due process because the Government failed to justify his prolonged detention; thus, it was proper for the district court to order a new bond hearing where the Government bore the burden of proof. *Id*. at 846.

The Second Circuit is not alone in its conclusion that the burden of proof rests with the Government to justify continued detention. The First Circuit came to a similar conclusion in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021). In *Hernandez-Lara*, a noncitizen petitioner who had fled to the United States many years prior was taken into custody by an immigration officer and detained pursuant to § 1226(a). *Id.* at 24. A month later, the petitioner received a bond hearing at which the burden of proof was placed on her to prove she was neither a danger to the community nor a flight risk. *Id.* The petitioner presented evidence regarding her lack of criminal record or history of arrest, her good moral character and ties to the United States. *Id*. The Government, in response, produced a notice stating that the petitioner was subject to an arrest warrant in her home country. *Id*.

The immigration judge, lacking clarity on what the notice meant about the petitioner's criminal activity, found that the petitioner failed to meet her burden and thus denied her request for bond. *Id.* at 25. The petitioner filed a habeas petition, claiming that "due process required the government to bear the burden of proving, by clear and convincing evidence, that she was either

dangerous or a flight risk, and therefore that her initial bond hearing was constitutionally inadequate." *Id.* at 25. The district court granted the petition and ordered the immigration judge to conduct another bond hearing at which the Government would bear the burden of justifying the petitioner's detention. *Id.* Following that hearing, where similar evidence was presented, the immigration judge granted the petitioner's request for bond. *Id.* at 25–26. The Government appealed, *id.* at 26, and the First Circuit addressed the core question: "Whether the Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to section 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangerous or a flight risk." *Id.* at 27. The First Circuit similarly assessed the *Mathews* factors, concluding that "the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)." *Id.* at 39.

The facts here are analogous to *Velasco Lopez* and *Hernandez-Lyons*. Petitioner has a pending charge against him related to driving while intoxicated and has no criminal convictions. ECF No. [5-1]. He was taken into custody, and the Government contends he is detained pursuant to § 1226(a). ECF No. [5] at 2. He received an initial bond hearing, at which the immigration judge concluded that Petitioner "ha[d] not met is burden in establishing he is" not a public safety risk and "ha[d] not met his burden in establishing he is a suitable bail risk[.]" ECF No. [5-6]. He was subsequently denied bond. *Id.* Respondents reiterate the applicability of that burden in their Response, asserting that at bond hearings, "[t]he alien bears the burden to establish that he does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." ECF No. [5] at 4. Thus, the issue confronting this Court is whether placing the burden on *detainees* to establish that they are entitled to release is constitutionally sound.

In 1996, Congress amended the INA by passing the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, 110 Stat. 3009 (1996). Following the enactment of IIRIRA, the Immigration and Naturalization Service ("INS") implemented new regulations impacting the standard to be applied in the custody determination context. One such regulation, 8 C.F.R. § 236.1(c)(8), states that an alien detained under § 1226(a) may be released if the alien "demonstrate[s] to the satisfaction of the [arresting] officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." The regulation only mentioned the initial custody determination made by the arresting officer. It did not discuss the standard to be applied by immigration judges at bond hearings. Nonetheless, the BIA promptly began applying the rule in § 236.1(c)(8) to such custody redeterminations. *See, e.g.*, *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (B.I.A. 2006); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999). In effect, § 236.1(c)(8) does not require the Government to show that a noncitizen is a danger to the community or a flight risk; instead, detention is presumed absent a showing by the detainee that he is not a danger to the community or a flight risk. *See, e.g.*, *Matter of Siniauskas*, 27 I. & N. Dec. 207, 210 (B.I.A. 2018).

The Fifth Amendment entitles all persons in the United States, including noncitizens, to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Of course, due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). But where, as here, there is no jurisdictional roadblock, courts routinely assess due process challenges using the three-factor test announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action." *Id.* at 348.

Here, an analysis of the *Mathews* factors counsels in favor of only one conclusion—that Petitioner's ongoing detention raises due process concerns, and additional procedural protections are necessary.

**i. First *Mathews* Factor**

As to the first *Mathews* factor, the private interest in physical liberty—in being free from restraint—is the most significant liberty interest of all. *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). Indeed, freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Supreme Court has stated, "We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Supreme Court has also stated that it "is clear that commitment for *any purpose* constitutes a significant deprivation of liberty that requires due process protection." *Id.* (emphasis added) (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)).

Petitioner has been detained for over eight months and does not have a criminal conviction or final order of removal. He has been unable to work or provide for family members—here, his wife and child—and has been unable to see family or friends outside of visiting hours. And for non-criminal detainees like Petitioner, the length of detention is "impossible to predict" but "can be quite lengthy[.]" *Hernandez-Lara*, 10 F.4th at 29. Indeed, it is "frequently prolonged" and "can

take months or years . . . even where an individual has prevailed and the Government appeals." *Velasco Lopez*, 978 F.3d at 852. Petitioner has therefore experienced a severe liberty deprivation, which is a finding separate from whether his detention is permissible. *Hernandez-Lara*, 10 F.4th at 28 ("the fact that some detention is permissible does not change the fact that a detainee suffers significant liberty deprivations"). Thus, the first *Mathews* factor weighs in Petitioner's favor.

**ii. Second *Mathews* Factor**

As to the second *Mathews* factor—the risk of erroneous deprivation and the probable value of additional procedural safeguards—the Court is instructed to consider "the interest of the *erroneously* detained individual." *Hamdi*, 542 U.S. at 529.

The Court finds the risk of erroneous deprivation high. Under the current regulatory scheme, the burden rests on detained noncitizens to gather and present evidence regarding their lack of danger to the community and no flight risk. But this presents obstacles, as one court in this Circuit explained:

> Incarceration restricts the noncitizen's ability to communicate with attorneys, family members, or other individuals who may present testimony or have access to the noncitizen's records. Limited resources and investigative tools increase the likelihood that the factual record developed at the bond hearing will be incomplete. An incomplete record creates a considerable risk of error in the IJ's findings and impairs the BIA's ability to correct erroneous deprivations.

*J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1337 (M.D. Ga. 2020).

Those obstacles existed here. After the bond hearing, the Immigration Judge explained that it had "no proof that [Petitioner]'s spouse/sponsor has any status in the United States; no proof of fixed address; [and] no proof of savings/property[.]" ECF No, [5-6]. For Petitioner—who is detained—accessing this proof is quite difficult. *See Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013) (noting detained noncitizens "have little ability to collect evidence"); *Hernandez-Lara*, 10 F.4th at 30 ("detained individuals will likely experience difficulty in gathering evidence on their

own behalf"). In essence, lacking a right to counsel, 8 U.S.C. § 1362, facing difficulty obtaining private counsel, and facing challenges collecting relevant information on their own, noncitizen detainees are presented with a risk that a factual record will not be properly presented before an immigration judge.

There are a myriad of other factors that often place noncitizen detainees at a disadvantage in custody redetermination hearings—that they often lack full English proficiency, *Hernandez-Lara*, 10 F.4th at 30, and they are pitted against governmental actors who are far more familiar with the relevant law and procedures, *see Santosky v. Kramer*, 455 U.S. 745, 763 (1982). Combined with the reality that it is often more difficult to prove a negative—in particular a lack of danger—than it is to prove an affirmative source of concern, *see Elkins v. United States*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative."), the Court finds that the current procedure is untenable, creating an unreasonable risk of error in bond proceedings.

The alternative procedure—namely, a hearing at which the Government bears the burden—offers viable ways to rectify the disadvantages inherent in bond redetermination hearings. Practically speaking, the Government would offer a reason to find a particular person dangerous, and the individual would then respond to the charge. That reason will, in most cases, be based on an individual's criminal history, which is comprised of records to which the Government has superior access. *See Velasco Lopez*, 978 F.3d at 853 (explaining that the government has access to "numerous databases[,] . . . to information collected by DHS, DOJ, and the FBI, [and to] information in the hands of state and local authorities"). Indeed, as one court in this Circuit stated:

> Federal law requires the Government to collect and maintain immigration data. *See, e.g.*, 8 U.S.C. §§ 1365a, 1376, 1377, 1377a, 1378, 1378a, 1226(d); see also 8 C.F.R. § 103.16(a). Federal law also ensures that ICE, DHS, and the Department of Justice ("DOJ") share information through interagency databases. *See, e.g.*, 8 U.S.C. §§ 1360, 1722. The Government is not limited to federal resources. State and local

> authorities may cooperate and share their information with federal agencies. 8 U.S.C. §§ 1373, 1357(g).

*J.G.*, 501 F. Supp. 3d at 1337.

As such, the Government has "substantial resources to deploy . . . Moreover, to the extent the Government did not have the necessary information at its fingertips, it had broad regulatory authority to obtain it." *Velasco Lopez*, 978 F.3d at 853 (citation omitted). The Government is better positioned to meet the burden of proof that would be placed on it than a detained noncitizen would be to prove a *lack* of danger to the community or flight risk. In light of this, the second *Mathews* factor weighs in Petitioner's favor.

**iii. Third *Mathews* Factor**

The final *Mathews* factor addresses "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. This requires an assessment of the "public interest." *Id.* at 347.

The Government undoubtedly has an interest in prompt execution of removal orders. *Nken v. Holder*, 556 U.S. 418, 436 (2009). It also has an interest in detaining individuals—within certain boundaries—for purposes of effectuating removal proceedings. *See Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 22 (1st Cir. 2007) (recognizing "the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country"). Indeed, § 1226(a) was enacted based on a concern that "[a] chief reason why many deportable aliens are not removed from the United States is the inability of [immigration officials] to detain such aliens through the course of their deportation proceedings." H.R. Rep. 104-469, pt. 1, at 123 (1996). And of course, the Court must bear in mind that "control over matters of immigration is a sovereign prerogative,

largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

Certainly, the Court does not address whether the Government may detain dangerous noncitizens or those who pose a risk of flight during removal proceedings. Rather, it addresses who should bear the burden of proving danger to the community or flight risk. Moreover, immigration detention is civil and "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Its aim, as relevant here, is to "protect[] the public" and "ensur[e] that noncitizens in removal proceedings appear for hearings." *See Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). But if the Government is asserting that it is detaining someone pursuant to § 1226(a), it is by necessity asserting that it does not view that person as falling into the "criminal" or "terrorism-related" categories captured by § 1226(c). *Hernandez Alvarez*, 175 F.4th at 1263. It therefore is illogical to begin with the *presumption* that the individual is dangerous if, inherent in the Government's assertion of detention authority, there is an indication that the individual is not dangerous. *See Hernandez*, 872 F.3d at 990 ("any detention incidental to removal must 'bear[ ] [a] reasonable relation to [its] purpose.'" (quoting *Zadvydas*, 533 U.S. at 690)).

Moreover, as the First Circuit and Second Circuit have noted, there is a strong case to be made that shifting the burden will cost the Government little and, perhaps, even result in savings. As part of the immigration detention process now, the Government already finds itself regularly consulting law enforcement records to determine if an individual properly falls under § 1226(c). *Hernandez-Lara*, 10 F.4th at 31. Thus, the Court "doubt[s] very much that shifting the burden will cause the government to expend more than minimal additional resources obtaining such records." *Id.* at 33. And limiting sustained detention to only those who are actually dangerous or flight risks will save the Government and the public from expending substantial resources on unnecessary

detention. *See Velasco Lopez*, 978 F.3d. at 854 n.11 ("Detention [of noncitizens] costs taxpayers approximately $134 per person, per day, according to ICE's estimates." (citing Dep't of Homeland Sec., *U.S. Immigr. & Customs Enf't Budget Overview* 14 (2018))).

As noted, the above factors do not capture the societal costs generated by unnecessary detention. The Court need look no further than Petitioner's circumstances to see those costs in action. Petitioner advises he is separated from his family, unable to work, and experiencing "anxiety, insomnia, emotional distress, intrusive thoughts, headaches, weight loss, mood changes and worsening mental health symptoms." ECF No. [1] ¶ 26. He is unable to care for his 8-year-old child, who "is facing quite serious medical and psychological consequences stemming from his father's arrest." *Id.* ¶ 17. The cost of separating families should not be understated as "[T]hose ruptures in the fabric of communal life impact society in intangible ways that are difficult to calculate in dollars and cents." *Hernandez-Lara*, 10 F.4th at 33.

Moreover, the current procedures are inconsistent with the clear dictate from the Supreme Court that "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake are both particularly important and more substantial than mere loss of money." *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (alterations and internal quotation marks omitted). As such, consistent with the decision in *Hernandez-Lara*, the Court finds that placing the burden on noncitizen §1226(a) detainees is an impermissible practice, and Petitioner is entitled to a bond hearing at which the Government bears the burden of proving (1) by clear and convincing evidence that he poses a danger to the community; or (2) by a preponderance of the evidence that he poses a flight risk. *See Hernandez-Lara*, 10 F.4th at 39–41.

**iv. Other Circuit Decisions**

The Court acknowledges that other circuits have issued decisions contrary to the Second Circuit that found that the burden should rest on the Petitioner. *Velasco Lopez*, 978 F.3d at 855. As stated, the First Circuit reached the same conclusion, holding that "the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)." *Hernandez-Lara*, 10 F.4th at 39.

By contrast, the Third Circuit, in a relatively short opinion, has upheld the constitutionality of placing the burden on § 1226(a) detainees in bond hearings. *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018). The Ninth Circuit has also indicated that noncitizen detainees may bear the burden of proof in bond hearings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212 (9th Cir. 2022). However, the dissent pointed out that the Second and First Circuits were closer to correct—after a detention becomes prolonged, the government should bear the burden of "prov[ing] its interest in detention by clear and convincing evidence." *Id.* at 1229 (Wardlaw, J., dissenting). And in *Miranda*, the Fourth Circuit stated that it "agree[d] with the Third Circuit's view of the burden of proof procedures in § 1226(a)." 34 F.4th at 366.

As the First and Second Circuits addressed a more fulsome range of the burdens and interests relevant to the *Mathews* analysis, those opinions are more persuasive.

**I. Eleventh Circuit Decision**

While this Court would be bound by a decision issued by the Eleventh Circuit, it addresses a seemingly contrary Eleventh Circuit decision. In *Sopo v. United States Attorney General*, the Eleventh Circuit rejected a § 1226(c) detainees request to shift the burden of proof to the Government in bond hearings. 825 F.3d 1199, 1219–20 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018). The Eleventh Circuit explained that doing so "would give criminal aliens a benefit

that non-criminal aliens do not have." *Id*. In that regard, *Sopo* can be read to impliedly sanction the burden allocation in § 1226(a) cases.

However, the decision in *Sopo* has been vacated and is no longer binding precedent. *See Sopo v. U.S. Att'y Gen.*, 890 F.3d 952, 953 (11th Cir. 2018). Moreover, the Eleventh Circuit did not address the constitutional sufficiency of the burden allocation in § 1226(a) cases—as that question was not before the court. Indeed, Judge Jill Pryor, concurring in part, explained that the majority had improperly "presume[ed]" that the procedures used in § 1226(a) cases—"which place the burden of proof on the alien at bond proceedings—fulfill the dictates of due process." 825 F.3d at 1232 (Pryor, J., concurring in part). Judge Pryor disagreed with that presumption, explaining the majority did not adequately weigh "the profound liberty interest at stake." *Id*. Thus, because *Sopo* addressed this issue only indirectly and by presumption *and* has been vacated, the Court does not find itself bound to uphold the existing bond procedures.

While it is true that "'[i]n the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)). Yet, that does not strip noncitizens of their due process rights, only that "the nature of that protection may vary depending upon status and circumstance." *Zadvydas*, 533 U.S. at 694. In the civil and nonpunitive context of pre-removal order § 1226(a) detention—which applies to those (a) found living in the interior of the country and (b) not categorized as having committed "criminal" or "terrorism-related" acts, *Hernandez Alvarez*, 175 F.4th at 1282—it is illogical to presume the noncitizen is a flight risk and a danger to the community. The Government must therefore be required to prove one or the other.

**C. Administrative Exhaustion**

Respondent also argues that the Petition should be dismissed because Petitioner failed to exhaust his administrative remedies. ECF No. [5] at 9-10. Respondent contends that Petitioner's claim—that his continued detention has become unconstitutionally prolonged without adequate procedural safeguards, ECF No. [1] at 5-6—fails because he was granted and received a bond hearing on May 26, 2026, and is proceeding before the BIA regarding the merits of the bond hearing. ECF No. [5] at 6 ("In other words, Petitioner has due process protections available through the appeal process.").

The Court finds that exhaustion would be futile and Petitioner is excused from his failure to exhaust his claims. Specifically, the exhaustion requirement under 8 U.S.C. § 1252(d)(1) "is not jurisdictional," but rather prudential. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) (acknowledging the abrogation of prior Eleventh Circuit precedent interpreting § 1252(d)(1) as a jurisdictional bar by *Santos-Zacaria v. Garland*, 598 U.S. 411, 413 (2023)). As a result, administrative "exhaustion is not required where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citing *Von Hoffberg v. Alexander*, 615 F.2d 633, 638 (5th Cir. 1980)). The BIA has made it explicitly clear that "the burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *Guerra*, 24 I. & N. Dec. at 40; *see also* 8 C.F.R. § 1236.1(c)(8). Thus, the Court deems the issue of burden of proof at a bond hearing under § 1226(a) predetermined, such that any appeal to the BIA on the issue would be illusory. The Court therefore excuses exhaustion.

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1]**, is **GRANTED**.
2. **By December 2, 2026**, Respondent shall grant Petitioner a bond hearing at which the Government will bear the burden of proving (1) by clear and convincing evidence that he poses a danger to the community or (2) by a preponderance of the evidence that he poses a flight risk.
3. Respondent must, within 24 hours of the bond hearing, file a status report indicating the outcome of the bond hearing and, if release on bond is denied, the reason(s) for the denial.
4. The Clerk of Court shall **CLOSE** this case.
5. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 25, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Victor Manuel Curbelo Alonso
A# 240475868
Broward Transitional Center
Inmate Mail/Parcels
3900 North Powerline Road
Pompano Beach, FL 33073
PRO SE